**STEADFAST INSURANCE COMPANY, Plaintiff,**

v.

**STROOCK & STROOCK & LAVAN LLP, Defendant.**

**No. 02 Civ. 8786(SAS).**

United States District Court, S.D. New York.

May 27, 2003.

---

Joseph G. Finnerty III, Robin C. Tarr, Piper Rudnick LLP, New York, New York, for Plaintiff.

Melvin A. Brosterman, Jonathan A. Siegel, Stroock & Stroock & Lavan LLP, New York, New York, for Defendant, pro se.

## OPINION AND ORDER

SCHEINDLIN, District Judge.

## I. INTRODUCTION

Steadfast Insurance Company ("Steadfast") seeks a declaration that it is not obligated to defend or indemnify its insured, Stroock & Stroock & Lavan LLP ("Stroock"), for its losses in connection with a now settled California bankruptcy adversary proceeding ("Bankruptcy Proceeding").

Steadfast moves for judgment on the pleadings pursuant to Federal Rule of Civil Procedure ("Rule") 12(c). Stroock cross-moves for partial summary judgment pursuant to Rule 56 declaring that Steadfast is obligated to defend and indemnify it. For the reasons stated below, Steadfast's motion is granted and Stroock's cross-motion is denied.[1]

## II. BACKGROUND FACTS[2]

### A. Stroock's Insurance Policy

Stroock purchased a professional liability insurance policy from Steadfast for the period September 1, 1997 to September 1, 2000.[3] See Lawyers Professional Liability Insurance Policy, No. EOC 8297283–01 ("Policy"), Ex. A to Steadfast Complaint ("Steadfast Compl."). This "claims made" policy[4] provided up to $25,000,000 in coverage for "all Loss and Defense Expenses in excess of the [$1,000,000] Retention ... resulting from Claims first made against

any insured during the Policy Period ... for Wrongful Acts occurring before or during the Policy Period." Policy § I(A). The Policy defined "Wrongful Act" as "any actual or alleged act, error, omission, or breach of duty committed by an Insured or by any person for whose actions the Firm is legally responsible ... but only in connection with the performance of, or failure to perform, Professional Services." Id. § II(K). "Professional Services" were defined as "services provided to actual or prospective clients of the Firm by an Insured: (1) as an attorney ... but only if such services are performed (or to be performed) in the name or on behalf of the Firm ..." Id. § II(J).

On the other hand, the Policy barred any claims "based on, arising out of or resulting from in fact: (1) any malicious, knowingly wrongful, or criminal act, error, omission, or breach of duty ...; or (3) the gaining by any Insured ... of any profit, gain or advantage to which such Insured or person was not legally entitled." Id. §§ III(A)(1), (3). A severability provision in the Policy limited the application of the exclusions by stating "no fact pertaining to or knowledge possessed by any Insured shall be imputed to any other Insured to determine if coverage applies." Id. § IV(I)(1). In addition, the Policy required Stroock to obtain Steadfast's written consent before admitting liability or settling any claims. See id. § I(B)(3).

---

**1.** Stroock counterclaimed for breach of the insurance contract, seeking compensation for its legal and settlement fees. See Defendant's Answer and Counterclaim ("Answer") ¶¶ 26–40. Because I am granting Steadfast's motion for judgment on the pleadings, Stroock's counterclaim is dismissed.

**2.** The facts on this motion are undisputed.

**3.** Stroock renewed this policy for the period September 1, 2000 to September 1, 2003. See 4/17/02 Letter from Liisa L'Huillier Pepe,

Steadfast's claims manager, to Harvey Brown, Stroock's Executive Director ("4/17/02 Ltr."), Ex. B to 3/7/03 Declaration of Melvin A. Brosterman ("Brosterman Decl.") at 2.

**4.** A "claims made" policy limits coverage to claims made against the insured during the policy period. Steadfast concedes the claims against Stroock were brought within the policy period. See 4/17/02 Ltr. at 2.

## B. The Underlying Dispute

In November 1999, the Official Committee of Unsecured Creditors of the Estate of Helionetics, Inc. ("the Creditors") commenced the Bankruptcy Proceeding against hundreds of defendants, including several law firms, financial advisors, consultants, shareholders, officers and directors, seeking to recover assets of Helionetics they claimed were fraudulently transferred. *See* Second Amended Complaint in *The Official Committee of Unsecured Creditors of the Estate of Helionetics, Inc. v. Katz, et al.,* Adv. Pr. No. 98–1916 ("Creditors Compl."), Ex. B to Steadfast Compl. The Creditors Complaint alleged that, in January 1994, Helionetics formed a subsidiary, KSWI, Inc., to acquire the assets of Kerby–Saunders–Warkol, Inc., a large mechanical contractor. Creditors Compl. ¶ 30. Helionetics later sought to spin off KSWI and another subsidiary, AIM Energy, through an initial public offering ("IPO"). *Id.* ¶ 38. Stroock and another law firm, Strasbourger Pearson, Tulein & Wolff ("Strasbourger"),[5] were responsible "for compiling information and preparing Registration Statements for [Helionetics] which were filed with the SEC." *Id.* In 1995, Helionetics abandoned the IPO because of financial difficulties. *Id.* ¶¶ 39–40. At the time, "KSWI was the only subsidiary of [Helionetics] operating at a profit and accounted for about 90% of [Helionetics'] revenues." *Id.* ¶ 41.

The Creditors Complaint further alleged that Helionetics' directors, officers, majority shareholders and consultants devised a scheme to remove KSWI from Helionetics' assets by distributing the KSWI common stock to Helionetics' shareholders while Helionetics was insolvent (the "KSWI Distribution"). *Id.* ¶ 42. As a result of the KSWI Distribution, Helionetics had no ability to pay its debts as they came due, causing "irreparable damage" to Helionetics' creditors. *Id.* ¶ 59.

The Creditors claimed that Stroock conspired with and aided and abetted Helionetics' directors to breach their fiduciary duties to the Creditors by preparing [on behalf of KSWI] the documents necessary to effect the KSWI Distribution.[6] *Id.* ¶¶ 49–51. The Creditors also claimed that Stroock unfairly benefitted by fraudulently transferring 50,000 shares of KSWI stock to itself. *Id.* ¶¶ 20, 62, 66(a). Stroock was named in five of the nine causes of action in the Creditors Complaint:

- the third cause of action alleged that Stroock participated in a fraudulent transfer in violation of sections 544, 548, and 550 of Title 11 of the United States Code and various sections of the California Civil Code, *id.* ¶¶ 82–85;

- the fifth cause of action alleged that Stroock benefitted from the fraudulent transfers at the expense of Helionetics' creditors, *id.* ¶¶ 91–95;

- the seventh cause of action alleged that Stroock aided and abetted the directors to breach their fiduciary duties by drafting documents to effect the stock distribution, *id.* ¶¶ 101–08;

- the eighth cause of action alleged that Stroock conspired to encourage or assist the directors to breach their fiduciary duties, *id.* ¶¶ 109–12;

---

**5.** Strasbourger was also named as a defendant in the Creditors Complaint.

**6.** The Creditors Complaint alleged that Stroock was retained by KSWI—not Helionetics—to provide advice and counsel in connection with the stock distribution. Creditors Compl. ¶ 49; *see also* Steadfast Compl. ¶ 11 ("[A]t all relevant times, Stroock was counsel for KSWI and its principals, Floyd Warkol and Burton Reyer.").

- the ninth cause of action requests a declaration requiring Stroock to return the KSWI assets to creditors, *id.* ¶¶ 113–15.

There was no claim in the Creditors Complaint against Stroock for legal malpractice or negligence.

The Creditors and Stroock settled their dispute in the Fall of 2002.[7] *See* Memorandum of Law in Support of Motion for Judgment on the Pleadings by Plaintiff Steadfast Insurance Company ("Pl.Mem.") at 7. Stroock now demands coverage under the Policy for all of the defense costs and settlement amounts it paid to resolve the claims in the Creditors Complaint.[8] Steadfast Compl. ¶ 13.

## C. Stroock's Claims Under the Policy

In November 1999, Stroock notified Steadfast that Stroock had been named as a defendant in the Bankruptcy Proceeding. *See* Brosterman Decl. ¶ 3. Stroock subsequently notified Steadfast that KSWI had filed an action against Stroock and two of its individual partners alleging legal malpractice, breach of fiduciary duty, and fraud ("KSWI Action").[9] *See id.* ¶ 4.

By letter dated April 17, 2002, Steadfast's claims manager informed Stroock that Steadfast would treat both the Bankruptcy Proceeding and the KSWI Action as one claim because they "arise out of a single Wrongful Act or series of related or continuing Wrongful Acts." 4/17/02 Ltr. at

1–2. Steadfast also identified potential coverage defenses to Stroock's claim. *See id.* at 3–4. On August 14, 2002, Steadfast sent a second reservation of rights letter to Stroock stating its preliminary view that the Creditors' claims against Stroock fell outside the scope of coverage of the Policy, but inviting Stroock to explain why "this preliminary view is not correct for any reason." 8/14/02 Letter to Brosterman from Joseph G. Finnerty III, counsel for Steadfast ("8/14/02 Ltr."), Ex. C to Brosterman Decl., at 1. The letter also directed Stroock's attention to the provision of the Policy that required Steadfast's written consent prior to consummating any settlement. *See id.* at 2.

## III. LEGAL STANDARD

Rule 12(c) provides that a judgment on the pleadings is appropriate "where material facts are undisputed and where a judgment on the merits is possible merely by considering the contents of the pleadings." *Sellers v. M.C. Floor Crafters, Inc.,* 842 F.2d 639, 642 (2d Cir.1988). In deciding a Rule 12(c) motion, the Court applies the same standard as that under Rule 12(b)(6). *See Irish Lesbian and Gay Org. v. Giuliani,* 143 F.3d 638, 644 (2d Cir.1998). Consideration of the sufficiency of a plaintiff's claim in a 12(b)(6) motion is limited "to the allegations of the complaint and any documents attached to or incorporated by reference in the complaint ..." *Dangler v. New York City Off Track Betting Corp.,* 193 F.3d 130, 138 (2d Cir.1999); *see also*

---

7. Stroock did not seek Steadfast's consent prior to settling the Bankruptcy Proceeding. Compl. ¶ 2(1).

8. Stroock alleges that it spent $425,000 to settle the Bankruptcy Proceeding and approximately two million dollars to defend itself in that proceeding. *See* Answer ¶¶ 22–23.

9. This action was filed in Los Angeles County Superior Court on February 13, 2001. *See*

Complaint in *KSW, Inc. et al. v. Tanenbaum, Pinedo, Stroock & Stroock & Lavan, et al.,* No. BC244992 ("KSWI Compl."), Ex. A to Brosterman Decl. Steadfast has acknowledged coverage in the KSWI action. *See* Defendant's Memorandum of Law in Opposition to Plaintiff's Motion for Judgment on the Pleadings and in Support of Cross–Motion for Partial Summary Judgment ("Def.Mem.") at 11.

*Alvarado v. Kerrigan,* 152 F.Supp.2d 350, 354 (S.D.N.Y.2001) ("In deciding a motion for judgment on the pleadings, a court may consider the pleadings and exhibits attached thereto, and statements or documents incorporated by reference in the pleadings.") (citing *Brass v. American Film Techs.*, 987 F.2d 142, 150 (2d Cir. 1993)). The court must accept all factual allegations in the complaint as true, *Leatherman v. Tarrant County Narcotics Intelligence and Coord. Unit,* 507 U.S. 163, 164, 113 S.Ct. 1160, 122 L.Ed.2d 517 (1993), and draw all reasonable inferences in the plaintiff's favor, *Dangler,* 193 F.3d at 138.

## IV. DISCUSSION

### A. Duty to Defend and Indemnify

In New York, an insurer's duty to defend is broader than its duty to indemnify.[10] *See Commercial Union Assurance Co. v. Oak Park Marina,* 198 F.3d 55, 59 (2d Cir.1999) (citation omitted). To determine whether an insurance carrier has a duty to defend under a professional liability policy, "the court must compare the [allegations in the] complaint against the insured with the language of the policy." *Tartaglia v. Home Ins. Co.,* 240 A.D.2d 396, 658 N.Y.S.2d 388, 390 (2d Dep't 1997) (citation omitted). Any ambiguity in the policy's meaning must be construed against the insurer in favor of the insured. *See Paul K. Rooney, P.C. v. Chicago Ins. Co.,* No. 00 Civ. 2335, 2001 WL 262703, at *5 (S.D.N.Y. Mar.16, 2001); *Cohen v. Employers Reinsurance Corp.,* 117 A.D.2d 435, 503 N.Y.S.2d 33, 34 (1st Dep't 1986). The insurer is obligated to defend if the

underlying action (here, the Bankruptcy Proceeding) falls within the scope of risk covered by the policy. *See Chubb Ins. Co. v. Hartford Fire Ins. Co.,* No. 97 Civ. 6935, 1999 WL 760206, at *4 (S.D.N.Y. Sept.27, 1999); *American Home Assurance Co. v. Port Auth. of N.Y. & N.J.,* 66 A.D.2d 269, 412 N.Y.S.2d 605, 609 (1st Dep't 1979). "On the other hand, if the allegations, on their face, do not bring the case within the coverage of the policy, there is no duty to defend or indemnify." *Tartaglia,* 658 N.Y.S.2d at 390 (citing *Lionel Freedman, Inc. v. Glens Falls Ins. Co.,* 27 N.Y.2d 364, 368, 318 N.Y.S.2d 303, 267 N.E.2d 93 (1971)). Courts must examine both the insuring agreement and the exclusion clauses to determine the scope of protection afforded by the policy. *See Albert J. Schiff Assoc. v. Flack,* 51 N.Y.2d 692, 697, 435 N.Y.S.2d 972, 417 N.E.2d 84 (1980).

### 1. All of the Claims in the Creditors Complaint Fall Within the Policy Exclusions

Steadfast argues that it was not obligated to defend Stroock because all of the claims in the Creditors Complaint fall squarely within two policy exclusions—the knowingly wrongful act exclusion and the unlawful profit gain or advantage exclusion. *See* Pl. Mem. at 11–17. Steadfast is correct.

An insurer may escape its duty to defend only if the insurer demonstrates: that the allegations of the complaint cast the pleadings wholly within that exclusion, that the exclusion is subject to no

---

10. Steadfast contends that the Policy expressly provides that New York law governs the interpretation of the Policy. *See* Pl. Mem. at 2 n. 1. However, the Policy merely provides that all *arbitrations* must apply New York law. Under the section entitled "Service of Suit," Steadfast agreed to "submit to the jurisdiction of any court of competent jurisdiction within

the United States, unless [Stroock] and [Steadfast] agree to arbitrate the matter." Policy § IV(N); *see also id.* § IV(O). Nonetheless, because both parties cited New York law in their briefs, they implicitly agreed that New York law governs this action. *See Santalucia v. Sebright Transp., Inc.,* 232 F.3d 293, 296 (2d Cir.2000).

other reasonable interpretation, and that there is no possible factual or legal basis upon which the insurer may eventually be held obligated to indemnify the insured under any policy provision. If *any* of the claims against the insured arguably arise from covered events, the insurer is required to defend the entire action.

*Frontier Insulation Contractors v. Merchants Mut. Ins. Co.*, 91 N.Y.2d 169, 175, 667 N.Y.S.2d 982, 690 N.E.2d 866 (1997) (emphasis added) (citations omitted). If the universe of claims against the insured requires proof of conduct that is excluded from coverage, then the insurer has no duty to indemnify or defend its insured. *See Davis v. Home Ins. Co.*, No. 95 Civ. 0094, 1995 WL 380133, at *2 (S.D.N.Y. June 26, 1995); *Tartaglia*, 658 N.Y.S.2d at 390.

■■■ The insurer bears the burden of proving that the exclusions apply in a particular case. *See State of N.Y. v. Blank*, 27 F.3d 783, 789 (2d Cir.1994) (citing *Continental Casualty Co. v. Rapid–American Corp.*, 80 N.Y.2d 640, 652, 593 N.Y.S.2d 966, 609 N.E.2d 506 (1993)). "This burden is heavy, especially when the insurer is seeking to avoid the duty to defend." *Commercial Union*, 198 F.3d at 60 (internal quotation marks and citations omitted). Exclusionary clauses are strictly construed to give the interpretation most beneficial to the insured. *See National Screen Serv. Corp. v. United States Fid. & Guar. Co.*, 364 F.2d 275, 279 (2d Cir.1966); *Seaboard Sur. Co. v. Gillette Co.*, 64 N.Y.2d 304, 311, 486 N.Y.S.2d 873, 476 N.E.2d 272 (1984). A construction favorable to the insurer will

be sustained only if it is the "only construction which may fairly be placed on the [words used]." *Vargas v. Insurance Co. of North Am.*, 651 F.2d 838, 842 (2d Cir. 1981).

### a. Knowingly Wrongful Act Exclusion

■■■ The Policy excluded any claims "based on, arising out of or resulting from in fact any ... *knowingly* wrongful ... act, error, omission, or breach of duty." Policy § III(A)(1) (emphasis added). The only reasonable interpretation of this exclusion is that Steadfast disclaimed coverage for all causes of action for which actual knowledge of wrongdoing is an essential element. The seventh and eighth causes of action in the Creditors Complaint accused Stroock of aiding and abetting and conspiring to breach a fiduciary duty under California law. Both of these causes of action require proof of actual knowledge. *See 1–800 Contacts, Inc. v. Steinberg*, 107 Cal.App.4th 568, 589, 132 Cal. Rptr.2d 789 (Cal.Ct.App.2003) (holding defendants are liable for conspiracy if they have "actual knowledge that a tort is planned and concur in the tortious scheme with knowledge of its unlawful purpose"); *Saunders v. Superior Court*, 27 Cal. App.4th 832, 33 Cal.Rptr.2d 438, 446 (1994) (finding that aiding and abetting requires actual knowledge). Thus, both claims fall squarely within the knowingly wrongful act exclusion.[11]

### b. Unlawful Profit, Gain or Advantage Exclusion

■■■ The Policy excluded all claims relating to the acquisition of "any profit, gain

---

**11.** The California state law fraudulent conveyance claims also fall within the knowingly wrongful act exclusion because actual knowledge of the avoidability of a transfer is required before liability can be imposed. *See CyberMedia, Inc. v. Symantec Corp.*, 19 F.Supp.2d 1070, 1075 (N.D.Cal.1998). The

federal fraudulent conveyance claims, however, require proof of constructive knowledge. *See, e.g., Richmond Produce Co. v. Sorani*, 195 B.R. 455, 464 (N.D.Cal.1996). Thus, these claims fall only within the unlawful profit or advantage exclusion, *see infra* Part IV.A.2.b.— not the wrongful act exclusion.

or advantage" to which the insured is not legally entitled. Policy § III(A)(3). The third, fifth and ninth causes of action in the Creditors Complaint sought recovery for alleged fraudulent transfers. The Complaint alleged, in particular, that Stroock was a creditor of Helionetics that had not been paid for approximately one year for services performed in connection with the failed IPO. *See* Creditors Compl. ¶ 61. Through the KSWI Distribution, Stroock received 50,000 shares of KSWI stock as compensation for the fees owed to it by Helionetics. *See id.* ¶ 62. Thus, the Creditors claimed Stroock "received a benefit unavailable to [Helionetics'] other unsecured creditors." *Id.; see also id.* ¶ 93 (alleging that "[t]he transfers gave Stroock an unfair advantage over [Helionetics'] other unsecured creditors who were unable to take advantage of the transfer agreements and accordingly were unpaid."). Because the Creditors Complaint clearly alleged that Stroock received an unlawful advantage as a result of the fraudulent transfers, the claims fall wholly within the unlawful profit, gain or advantage exclusion.[12]

**12.** Stroock claims that it was legally entitled to the stock as compensation for its legal services. *See* Def. Mem. at 7–8. The fact that Stroock was entitled to attorneys' fees does not mean that it was entitled to get paid through an unlawful stock distribution before Helionetics' other creditors.

**13.** Stroock maintains that the exclusions at issue here are inapplicable because the Policy's severability clause prohibits imputing knowledge from one attorney to the entire firm. *See* Def. Mem. at 17–21. The Policy states that "no fact pertaining to or knowledge possessed by any Insured shall be imputed to any other Insured *to determine if coverage applies.*" Policy § IV(I)(1) (emphasis added). It does not prevent imputation of knowledge or conduct to establish liability for the underlying claims; liability is established by traditional agency principles. . *See Sunrise Props., Inc. v. Bacon, Wilson, Ratner, Cohen,*

■ Because the Policy excludes from coverage all five causes of action asserted against Stroock in the Creditors Complaint, Steadfast had no duty to defend Stroock in the Bankruptcy Proceeding.[13] In addition, because the duty to defend is far broader than the duty to indemnify, Steadfast also had no duty to indemnify Stroock.

**2. The Creditors Complaint Does Not Clearly Allege that Stroock Committed an Act, Error, Omission, or Breach of Duty in Providing Professional Services**

Steadfast additionally argues that the claims against Stroock in the Bankruptcy Proceeding are not covered under the Policy because they were not claims for "negligence in providing legal services." *See* Pl. Mem. at 9–11. Stroock contends that the Creditors Complaint alleged Stroock acted wrongfully in its representation of both Helionetics and KSWI. *See* Def. Mem. at 13–14.

The Policy covered only claims for "Wrongful Acts", defined as "any actual or

*Salvage, Fialky & Fitzgerald, P.C.,* 425 Mass. 63, 66–69, 679 N.E.2d 540 (1997) (applying traditional agency law principles to impute lawyer's conduct to law firm despite insurance policy's severability clause); *Mendel v. Home Ins. Co.,* 806 F.Supp. 1206, 1211 (E.D.Pa.1992) (same).

Because the Creditors Complaint alleged that Stroock itself—rather than the partners or associates employed by the firm—engaged in knowingly wrongful conduct and that Stroock received a profit or advantage to which it was not legally entitled, there is no question as to whether coverage applies. Thus, the issue of whether knowledge can be imputed from one insured to another is irrelevant. Stroock's liability depended solely upon whether the conduct and knowledge of Stroock's attorneys could be imputed to Stroock under the traditional agency principle of respondeat superior.

**254**

alleged act, error, omission, or breach of duty committed ... *in connection with the performance of, or failure to perform, Professional Services.*" Policy § II(K) (emphasis added). Under the policy, the performance of professional services required the existence or anticipation of an attorney-client relationship. *See* Policy § II(J) (defining "Professional Services" as "services provided to *actual or prospective clients* of the Firm by an Insured ... as an attorney ....") (emphasis added). The Creditors Complaint alleged that Stroock provided advice and counsel to Helionetics and KSWI, without which the "[KSWI] [D]istribution and related transactions could not have been completed." Creditors Compl. ¶¶ 50–51. It did not allege, however, that Helionetics was an "actual" or "prospective" client of the firm. *See id.* ¶ 49 (indicating that Stroock was retained only by KSWI).[14] Thus, it is not clear from the Complaint whether Stroock was providing "Professional Services" to Helionetics within the meaning of the Policy. In addition, the Complaint contained no causes of action for legal malpractice.[15] The Creditors alleged only that Stroock participated in a conspiracy to dilute the value of Helionetics at the expense of its creditors. In any event, because coverage is barred by the policy exclusions, there is no need to decide this issue.

**B. Waiver**

 Stroock urges the Court to find that Steadfast waived its right to assert any coverage defenses by failing to timely disclaim coverage. *See* Def. Mem.

at 21–22. New York law defines waiver as "a voluntary and intentional relinquishment of a known right." *State of New York v. AMRO Realty Corp.*, 936 F.2d 1420, 1431 (2d Cir.1991). "An insurer can be said to have waived certain defenses where there is proof that the insurer intended to abandon that defense, or where such an intention can clearly be inferred from the circumstances." *Interstate Indem. Co. v. Continental Ins. Co.*, No. 94 Civ. 5201, 1998 WL 118165, at *2 (S.D.N.Y. Mar. 16, 1998) (citing *AMRO Realty*, 936 F.2d at 1431). When an insurer reserves its right to deny coverage, estoppel and waiver may not be inferred. *See, e.g., K. Bell & Assoc., Inc. v. Lloyd's Underwriters*, No. 92 Civ. 5249, 1997 WL 96551, at *7 (S.D.N.Y. Mar.5, 1997), *aff'd*, 129 F.3d 113, 1997 WL 701387 (2d Cir.1997); *see also* Matthew Bender, *New York Insurance Law, New York Practice Series* § 39.05[2] (1995) ("To avoid any possible risk of waiver or estoppel, the excess or umbrella insurer should send the insured a written notice that the insurer is reserving various rights to disclaim coverage...."); 7C John Alan Appleman et al., *Insurance Law & Practice* § 4694 (2d ed. 1979) ("[I]f an insurer conducts an investigation or defense under ... a notice of reservation of its rights, it will not thereby be estopped to set up any policy defenses that may be available to it."). Moreover, "the doctrine of waiver is inapplicable where the defense at issue is the existence or nonexistence of coverage." *Interstate Indem.*, 1998 WL 118165 at *2 (citing *Albert J. Schiff,* 51

**14.** On the contrary, the Creditors Complaint makes clear that Helionetics was represented separately by an attorney named Donald Davis in connection with the spin-off of KSWI. *See* Creditors Compl. ¶¶ 13, 52.

**15.** Although the causes of action in the Creditors Complaint arise out of Stroock's role as counsel for KSWI, the Creditors opted not to

bring malpractice claims in this suit and instead to bring a separate action against KSWI for legal malpractice. *See supra* Part II.C. n. 8. The malpractice claims in the KSWI Action clearly fall within the scope of the Policy, which is presumably why Steadfast has agreed to provide coverage in that suit.

N.Y.2d at 698, 435 N.Y.S.2d 972, 417 N.E.2d 84).[16]

 Here, Steadfast reserved its right to disclaim coverage by issuing two reservation of rights letters notifying Stroock about its potential denial of coverage on the identical bases asserted in this litigation.[17] *See* 4/17/02 Ltr.; 8/14/02 Ltr. However, even if Steadfast had not explicitly reserved its rights, it cannot be said to have waived its defenses to coverage.[18]

## V. CONCLUSION

For the foregoing reasons, Steadfast's motion for judgment on the pleadings is granted, and Stroock's motion for partial summary judgment is denied. The Clerk of the Court is directed to close this case.

---

**16.** Stroock relies solely upon cases arising under section 3420(d) of the New York Insurance Law, which applies only to actions for "death or bodily injury" caused by motor vehicle accidents or other accidents within the state. *See* N.Y. Ins. Law § 3420(d) (McKinney 2002).

**17.** Steadfast's delay in disclaiming coverage cannot operate to create coverage where none exists. *See, e.g., Rivera v. St. Regis Hotel Joint Venture,* 240 A.D.2d 332, 659 N.Y.S.2d 270, 272 (1st Dep't 1997) ("a failure to disclaim cannot create coverage that the policy was not written to provide").

**18.** Stroock does not and cannot argue that Steadfast is equitably estopped from denying coverage. Equitable estoppel is appropriate "where an insurer though in fact not obligated to provide coverage, without asserting policy defenses or reserving the privilege to do so, undertakes the defense of the case, in reliance on which the insured suffers the detriment of losing the right to control its own defense." *Albert J. Schiff,* 51 N.Y.2d at 699, 435 N.Y.S.2d 972, 417 N.E.2d 84. "However, where the policy in question never provided coverage of that type of claim or of the particular insured, coverage can not be created through equitable estoppel solely because the insurer failed to make a timely disclaimer." *Interstate Indem.,* 1998 WL 118165 at *4 (citations omitted).

Here, Steadfast reserved its rights to assert certain policy defenses *and* the claims asserted against Stroock were not covered under the Policy. Moreover, Stroock cannot demonstrate that it detrimentally relied on Steadfast's conduct. *See id.* at *4 ("Prejudice from reliance on the insurer's conduct must be shown for equitable estoppel to be applied."). Delay in disclaiming coverage fails to establish prejudice. *See id.* In addition, Stroock's decision to settle the claims undercuts any argument of prejudice. Thus, Steadfast is not precluded by the doctrine of equitable estoppel from asserting the defense of non-coverage.