# United States Court of Appeals

## FOR THE EIGHTH CIRCUIT

_____

No. 08-2848

_____

American Home Assurance Company,  *

                  *

      Appellee,  *

                  *

  v.  *

                  *

Kelly Pope,  *

                  *

      Appellant.  *


_____

No. 08-2853

_____

American Home Assurance Company,  *

                  *

      Appellee,  *

                  *

  v.  *

                  *

C. Robert Buckley, appointed as legal  *

representative of Bruce N. Strnad,  *

a deceased individual,  *

                  *

      Appellant.  *

Appeals from the United States
District Court for the Western
District of Missouri.

_____

Submitted: February 11, 2009
Filed:  January 11, 2010
_____

Before RILEY, SMITH, and SHEPHERD, Circuit Judges.
_____

RILEY, Circuit Judge.

This appeal arises from a summary judgment granted in favor of American Home Assurance Company (American Home) in a suit against Kelly Pope (Kelly) and C. Robert Buckley (Buckley).  American Home filed a diversity suit seeking a declaration it was not liable under a professional liability insurance policy for the acts of Dr. Bruce N. Strnad (Dr. Strnad), who was a named insured under the policy.  This case is before us on appeal for the third time.  See Am. Home Assurance Co. v. Pope, 360 F.3d 848 (8th Cir. 2004) (American Home I); Am. Home Assurance Co. v. Pope, 487 F.3d 590 (8th Cir. 2007) (American Home II).  In American Home II, 487 F.3d at 607, we remanded for the district court to determine whether an exclusion in the policy exempted American Home from liability under the policy, and if not, whether Kelly was entitled to indemnification from American Home.  The district court determined the policy exclusion applied, granted summary judgment to American Home, and declined to decide the second issue.  We reverse.

I.    **BACKGROUND**
   A.    **Factual History**
   In 1979, when Kelly was three years old, she was placed in foster care with Lester and Nancy Pope.  One year later, Lester began sexually molesting Kelly. Lester and Nancy adopted Kelly in 1981, and the sexual abuse continued until 1989, when Kelly was thirteen years old.  In 1988, Nancy discovered evidence of the abuse and questioned Kelly.  Kelly told Nancy that Lester had been molesting her.  Nancy

arranged a meeting with Nancy's psychologist, Dr. Strnad, and his business partner, Dr. Joel Ray (Dr. Ray), to discuss the accusation. During this meeting, Nancy disclosed to Dr. Strnad her belief Lester was sexually abusing Kelly. Nancy asked Dr. Strnad not to report Lester's sexual abuse to anyone, and Dr. Strnad agreed. Dr. Strnad also agreed to begin counseling Lester.

After the meeting, Nancy confronted Lester about the abuse. Lester admitted he had sexually abused Kelly and agreed to counseling with Dr. Strnad. Lester attended counseling with Dr. Strnad and again confessed he had sexually abused Kelly. Lester quit therapy after four more sessions and the abuse of Kelly continued. Neither Dr. Ray nor Dr. Strnad notified officials about the abuse, even though both doctors were obligated by law to report suspected child abuse to the Missouri Division of Family Services. See Mo. Rev. Stat. §§ 210.115.1, 210.165.1. Both doctors also failed to warn anyone in a position to protect Kelly that Lester had stopped attending therapy or that Lester continued to threaten Kelly's safety.

During this time, Drs. Ray and Strnad were insured by American Home under a professional liability insurance policy for psychologists. The insurance contract stated American Home would pay "all sums which the Insured shall become legally obligated to pay as damages because of any wrongful act committed" in the course of the doctors' "professional services," as well as the cost of defending a suit for such a wrongful act. The policy defined a "[w]rongful act" as "any actual or alleged negligent act, error, or omission, or any actual or alleged defamation." The insurance contract also contained several exclusions from coverage. One exclusion denied coverage for liabilities resulting from "any wrongful act committed with knowledge that it was a wrongful act." Another exclusion denied coverage for criminal acts.

In April 1989, Nancy and Lester divorced. Nancy never disclosed Lester's sexual abuse of Kelly during the divorce proceedings, and Lester continued to sexually abuse Kelly. During the summer of 1989, Kelly told Nancy that Lester had

performed a sex act on her. Nancy did not seek any help for the abuse until December 1989. At that time, Nancy took Kelly to see Lynn Ogden (Ogden), a social worker employed in the same office as Drs. Ray and Strnad. Nancy sought help with Kelly's emotional issues stemming from the abuse. When Ogden learned of the abuse, she promptly reported the abuse to the Missouri Division of Family Services as required by Missouri law. Health officials determined Kelly had been physically and psychologically traumatized as a result of Lester's molestation over a period of ten years. Kelly was removed from the home, and Lester was charged with three counts of sodomy and one count of attempted rape. Lester pled guilty to one count of sodomy and served five years in prison. Dr. Strnad avoided prosecution for failing to report the abuse by testifying at Lester's sentencing hearing in exchange for a grant of immunity.

### B.    Procedural History

In 1991, Norma Bradley (Bradley) filed a lawsuit in Missouri state court on behalf of Kelly, a minor child. The complaint alleged, among other claims, (1) Drs. Ray and Strnad were negligent per se in violating the Missouri mandatory reporting statute, and (2) Drs. Ray and Strnad breached a common law duty to warn of Lester's continued danger to Kelly's safety. The Missouri state trial court dismissed the claims.

The Missouri Court of Appeals upheld the trial court's dismissal of the negligence per se claim, but reversed the trial court's dismissal of the common law failure to warn claim. See Bradley v. Ray, 904 S.W.2d 302, 305 (Mo. Ct. App. 1995). In so holding, the court of appeals recognized a common law duty to warn on the part of treating psychologists, in accord with the vast majority of other jurisdictions. See id. at 312. The Missouri court explained,

> when a psychologist or other health care professional knows or pursuant
> to the standards of his profession should have known that a patient

-4-

presents a serious danger of further violence to a readily identifiable victim, the psychologist has a duty under Missouri common law to warn the intended victim or communicate the existence of such danger to those likely to warn the victim including notifying appropriate enforcement authorities.

Id. The Missouri Court of Appeals then remanded the case for the trial court to determine whether Drs. Ray and Strnad breached their common law duty to warn. Id. For reasons unexplained by the parties, Bradley failed to pursue the case on Kelly's behalf, and the trial court dismissed the case without prejudice in 1998. In 1999, Kelly re-filed the case on her own behalf, and included a failure to warn claim against Dr. Ray and an unnamed defendant ad litem for Dr. Strnad, who was then deceased. Dr. Strnad's widow, Donna Strnad, was eventually appointed defendant ad litem.

When the suit was initially filed, American Home provided a defense for both Dr. Ray and Donna Strnad as defendant ad litem. On April 2, 2002, American Home sent Dr. Ray and Donna Strnad a letter in which American Home agreed to defend and indemnify Dr. Ray, but refused to defend further or indemnify Dr. Strnad's estate. The following day, American Home filed suit against Kelly and Donna Strnad in the United States District Court for the Western District of Missouri, seeking a judgment declaring American Home had no duty to defend or indemnify Dr. Strnad's estate because, among other reasons, Dr. Strnad's conduct was subject to policy exclusions. American Home argued, because Dr. Strnad violated Missouri's mandatory reporting statute and engaged in knowingly wrongful conduct, the policy exclusions for claims arising out of criminal conduct and knowingly wrongful acts should apply.

One week after American Home filed the declaratory judgment action, Kelly reached an agreement with Donna Strnad. The relevant terms of the agreement provided (1) Kelly would no longer seek damages against Dr. Strnad's estate, but would only pursue recovery from American Home; (2) Buckley would replace Donna Strnad as defendant ad litem; (3) Kelly and Buckley would submit the dispute to

binding arbitration before a panel of retired Missouri judges; (4) Buckley would not object to any evidence Kelly presented to the panel; and (5) the panel would only need to determine whether Dr. Strnad was negligent and would not be required to provide a further basis for its ruling.

The case then proceeded in three separate actions: (1) Kelly's state court action against Dr. Ray, (2) Kelly's state arbitration proceeding against Buckley as defendant ad litem for Dr. Strnad, and (3) American Home's federal declaratory judgment action against Kelly and Buckley. Kelly's state court action against Dr. Ray was tried in September of 2003. The sole issue in Kelly's suit against Dr. Ray was whether Dr. Ray was vicariously liable for the negligent acts and omissions of his partner, Dr. Strnad. The jury found for Kelly and awarded $5 million in damages against Dr. Ray.

A few months later, in early 2004, the case against Dr. Strnad was submitted to arbitration. American Home refused to defend Dr. Strnad and did not take part in the arbitration. The parties submitted, and stipulated to, the record from Dr. Ray's trial as the evidentiary record in the arbitration proceeding. The arbitrators found for Kelly and awarded $8 million in damages. Kelly submitted the arbitration award to the state trial court. In a single order, the state court entered judgment upon the jury verdict against Dr. Ray and the arbitration award against Dr. Strnad, and assessed prejudgment interest for a total award of more than $27 million.

Dr. Ray appealed the judgment against him, and the Missouri Court of Appeals affirmed on the basis of liability, but reversed and remanded to the trial court for a new trial on the issue of damages because the jury received an exhibit related to insurance coverage without a proper limiting instruction. See Pope v. Pope, 179 S.W.3d 442, 464-66 (Mo. Ct. App. 2005) (en banc). Upon remand, the trial court did not hold a new trial, but rather entered judgment against Dr. Ray in the amount of $8 million, plus prejudgment interest, based on the Dr. Strnad arbitration award. Dr. Ray appealed this judgment, and on September 1, 2009, the Missouri Court of Appeals

reversed and remanded with instructions to carry out the appellate court's original mandate, which was to have a new trial on the issue of damages.

Meanwhile, in the federal declaratory judgment action, the district court granted American Home's motion for summary judgment, finding Dr. Strnad's failure to report Lester's abuse amounted to a criminal act because it violated Missouri's child abuse reporting statute. The court concluded Dr. Strnad's conduct fell within the policy exclusion denying coverage for criminal acts, and therefore, Dr. Strnad's estate was not entitled to insurance coverage under the policy. This decision effectively eliminated Kelly's ability to collect on the judgment against Dr. Strnad because Kelly previously had agreed not to seek judgment from the Strnad estate.

In American Home I, 360 F.3d at 853, a panel of this court reversed. We explained Kelly's complaint contained two separate allegations against Dr. Strnad. "First, [Kelly] alleged that [Dr. Strnad] violated Missouri law by failing to report knowledge of Lester's abuse to authorities." Id. at 851. We then noted, "To the extent that Kelly asserted a private cause of action arising out of Dr. Strnad's violation of the criminal statute, Missouri has prohibited such an action." Id. at 851 n.7 (citing Doe "A" v. Special Sch. Dist., 637 F. Supp. 1138, 1148 (E.D. Mo. 1986) ("'[T]he Missouri child abuse reporting statute creates a duty owed to the general public, not to specific individuals, and consequently the statute does not support a private cause of action in favor of individuals.'")); see also Bradley, 904 S.W.2d at 314.

Kelly conceded the criminal act exclusion exempted Kelly from coverage under the insurance policy on Kelly's first claim, but maintained the district court failed to consider Kelly's second claim, that Dr. Strnad negligently failed to fulfill his common law duty to warn Kelly, or someone else in a position to protect her, such as law enforcement, that Lester had stopped attending therapy and was likely to continue abusing Kelly. American Home I, 360 F.3d at 851. We agreed and held the district court erred in concluding the criminal act exclusion applied to all of Kelly's claims

against Dr. Strnad, because the failure to warn some person or entity other than the Missouri Division of Family Services was not a criminal act, but could amount to breach of the common law duty to warn. See id. at 852. We explained,

> American Home has not cited any Missouri statute or case law making criminal the failure to warn *the victim* of the possibility of future abuse. Since American Home has failed to show how Dr. Strnad's failure to report the future dangerousness for abuse to Kelly or her mother should fall within the exclusion, the coverage of the policy applies.

Id. (citing Nat'l Union Fire Ins. Co. v. Structural Sys. Tech., Inc., 964 F.2d 759, 761 (8th Cir. 1992) (declaring, under Missouri law, "the insurer has the burden of proving the applicability of any exclusion upon which it relies")).

On remand, the district court granted summary judgment to Kelly and Buckley. See Am. Home Assurance Co. v. Pope, No. 02-4057, 2005 WL 2600438, at *6 (W.D. Mo. Oct. 13, 2005), rev'd 487 F.3d 590 (8th Cir. 2007). The district court cited our broad statement in American Home I that "'the coverage of the Policy applies,'" and concluded American Home had a duty both to defend and to indemnify Dr. Strnad's estate for damages arising from Dr. Strnad's negligent failure to warn Kelly, or someone else in a position to protect Kelly, about Lester's continued danger. Id. at *5.

American Home appealed, and the case came before this court for a second time. See American Home II, 487 F.3d at 590. In our decision, we began our analysis "with a clarification of the matters we did and did not decide in American Home I." Id. at 598. In American Home I, we held Kelly's allegation of common law negligence precluded a finding of summary judgment in favor of American Home and required American Home to provide a defense to Dr. Strnad. Id. at 599. We did not resolve the separate issue of whether the common law failure to warn claim "was valid

for the purpose of the duty to indemnify, however, because no fact-finding body had ever considered the question of whether that claim or other claims were causally linked to Kelly's alleged damages." Id.

As a result, we again remanded to the district court "for a factual determination of whether, and to what extent, Strnad's failure to warn [Kelly], her mother, or some person or entity other than the Missouri Division of Family Services caused [Kelly's] injuries." Id. at 601. We then explained,

> On remand, American Home may also seek to prove that the "knowingly wrongful" policy exclusion applies to the claim for indemnification. As noted earlier, American Home's duty to defend was the only issue before this court in American Home I, and the "knowingly wrongful" exclusion did not apply in that context because [Kelly] alleged only negligence and her allegations, on their face, were not subject to the exclusion. Those allegations, however, are relevant only to the duty to defend; determination of a duty to indemnify "must await the facts."

Id. (quoting Superior Equip. Co. v. Md. Cas. Co., 986 S.W.2d 477, 484 (Mo. Ct. App. 1998)). In concluding our opinion, we asked the district court to consider whether the knowingly wrongful act exclusion applied, and if not, whether Dr. Strnad's failure to warn gave rise to Kelly's damages. Id. at 607.

On remand the district court granted summary judgment to American Home. The district court found, "Dr. Strnad knew of his duty to report the sexual abuse to authorities and warn others of Lester's ongoing threat to Kelly, yet Dr. Strnad intentionally concealed the abuse." The district court held "Dr. Strnad's conduct was knowingly wrongful within the language of the policy exclusion," and therefore, American Home did not have a duty to indemnify Dr. Strnad. Kelly now appeals the district court's grant of summary judgment in favor of American Home.

## II.    DISCUSSION

### A.    Knowingly Wrongful Act Exclusion

Kelly contests the district court's finding that Dr. Strnad's conduct was knowingly wrongful within the language of the insurance policy.[1] Because the policy exclusion is ambiguous, we follow Missouri law and reverse.

"The interpretation of a contract, including determining whether it is ambiguous as written, is a question of law which we review de novo." United States v. Brekke, 97 F.3d 1043, 1049 (8th Cir. 1996) (citations omitted).  In a diversity action, such as this, we use state substantive law to govern our analysis.  See Erie R. Co. v. Tompkins, 304 U.S. 64, 78 (1938).  Thus, Missouri law controls our decision.

"Where insurance policies are unambiguous, the rules of construction are inapplicable, and absent a public policy to the contrary, the policy will be enforced as written." Krombach v. Mayflower Ins. Co., 827 S.W.2d 208, 210 (Mo. 1992) (en banc) (citations omitted).  Language is ambiguous when there is uncertainty in the meaning of words used in the contract, or when the contract terms are reasonably subject to different interpretations.  Id.  Missouri courts "follow a construction favorable to the insured wherever the language of a policy is susceptible of two meanings, one favorable to the insured, the other to the insurer." Meyer Jewelry Co. v. Ge. Ins. Co. of Am., 422 S.W.2d 617, 623 (Mo. 1968) (citations omitted).  "Provisions restricting coverage are particularly construed most strongly against the insurer." Id.; see also Krombach, 827 S.W.2d at 210-11 ("Ambiguous provisions of a policy designed to cut down, restrict, or limit insurance coverage already granted, or introducing exceptions or exemptions must be strictly construed against the insurer." (citations omitted)). These rules of construction exist because (1) "insurance

---

[1]American Home claims Kelly waived this claim because it was not raised in the district court.  The issue was raised by both Kelly and Buckley in the district court in multiple filings, including an April 18, 2003 filing entitled, "Suggestions in Support of Defendant's Motion for Summary Judgment."

is designed to furnish protection to the insured, not defeat it," and (2) "as the drafter of the insurance policy, the insurance company is in the better position to remove ambiguity from the contract." Krombach, 827 S.W.2d at 210-11.

Two contract provisions are at issue in this case. The first is the provision establishing the coverage American Home agreed to provide Drs. Ray and Strnad under the policy. American Home agreed "to pay on behalf of the Insured all sums which the Insured shall become legally obligated to pay as damages because of any wrongful act committed during the policy period by the Insured . . . arising solely out of the performance of professional services." For purposes of this provision, the term "wrongful act" is defined as "any actual or alleged negligent act, error, or omission, or any actual or alleged defamation." The second provision at issue excludes coverage for "any wrongful act committed with knowledge that it was a wrongful act."

The ambiguous nature of the contract becomes apparent when the conduct expressly covered by the policy is compared and contrasted with the conduct expressly excluded. First, the contract states it will insure damages resulting from a "wrongful act," defined, in relevent part, as "*any* actual or alleged negligent act, error, or omission." (emphasis added). Then, the contract excludes coverage for liabilities resulting from a *knowingly* wrongful act. The parties provide two quite different interpretations for this knowingly wrongful act exclusion.

American Home asserts, because Dr. Strnad knew he had a duty to report and violated that duty, Dr. Strnad committed a knowingly wrongful act, and his conduct is expressly excluded under the policy. Kelly maintains the knowingly wrongful act exclusion is an exclusion for intentional, not negligent, conduct which would require a showing Dr. Strnad intended to harm Kelly or intended the harmful consequences of his actions. See, e.g., Am. Family Mut. Ins. Co. v. Lacy, 825 S.W.2d 306, 315 n.7 (Mo. Ct. App. 1991) ("In order for an act to be *intentional* for purposes of tort law as

-11-

well as of exclusionary clauses in liability insurance policies . . . the actor must desire to cause the consequences of the act, or the consequences must be substantially certain to result." (citations omitted)). We conclude the knowingly wrongful act exclusion is reasonably subject to different interpretations, and we must follow the construction most favorable to Kelly. See Meyer Jewelry Co., 422 S.W.2d at 623.

The American Home policy is a professional liability insurance policy which insures negligent conduct, but American Home now attempts to exclude the knowing breach of a duty, which breach is by its nature negligence. A negligence claim necessarily requires a duty to act, that is, a duty known or presumptively known by the defendant. See generally, L.A.C. ex rel D.C. v. Ward Parkway Shopping Ctr. Co., 75 S.W.3d 247, 257 (Mo. 2002) (en banc) ("In any action for negligence, the plaintiff must establish that the defendant had a duty to protect the plaintiff from injury, the defendant failed to perform that duty, and the defendant's failure proximately caused injury to the plaintiff." (internal marks and citations omitted)); Hoover's Dairy, Inc. v. Mid-America Dairymen, Inc., 700 S.W.2d 426, 432 (Mo. 1985) (en banc) (explaining "knowledge is an element that must [often] be included in a negligence instruction in order to impose the existence of the claimed duty" (footnote omitted)).

Further, Kelly's underlying claim for insurance coverage of a judgment issued on an award by an arbitration panel of three retired Missouri judges is based entirely on Dr. Strnad's negligence. Kelly holds a valid judgment explicitly arising from Dr. Strnad's negligence as found by the arbitration panel. American Home has not challenged the arbitration action on collusion grounds or on any other grounds. As a result, American Home is obligated to provide liability insurance for Dr. Strnad's negligent conduct, because the insurance policy covers any actual or alleged negligent act.

If we interpret the ambiguous contract provisions using the construction most favorable to Kelly, as we must, the insurance policy exclusion for knowingly wrongful

acts reasonably could be described as an exclusion for intentional misconduct. In <u>Am. Home Assurance Co. v. Stone</u>, 864 F. Supp. 767, 774 (N.D. Ill. 1994), the district court explained a knowingly wrongful act exclusion, identical to the one at issue here, was "an exclusion for intentional conduct," and it was for a jury to decide whether the charged conduct was negligent or intentional. In Kelly's case, a fact-finding body has already concluded Dr. Strnad's conduct was negligent. In contrast, there has been no finding of intentional misconduct which would satisfy Missouri's requirement that an insured intend, not only the act itself, but also the consequences. <u>See</u> <u>White v. Smith</u>, 440 S.W.2d 497, 507-08 (Mo. Ct. App. 1969) ("To entertain a contrary view would work an exclusion from coverage of many, if not most, claims for damages arising out of the negligence of insureds and thus defeat the primary purpose for which liability insurance coverage is purchased." (citations omitted)).

The Sixth Circuit has also interpreted a professional liability insurance policy similar to the one at issue here. <u>Ill. Union Ins. Co. v. Shefchuk</u>, 108 Fed. Appx. 294 (6th Cir. 2004) (unpublished per curiam). In <u>Shefchuk</u>, the insurer agreed to cover liabilities resulting from "wrongful acts," defined as "any negligent breach of duty . . . or other negligent act." <u>Id.</u> at 297. The policy excluded wrongful acts which were "dishonest, fraudulent, criminal, malicious or knowingly wrongful." <u>Id.</u> Because the clause excluded "'claims that [we]re both negligent and not negligent,'" the court found the exclusionary provision was ambiguous, requiring it to be construed against the insurer. <u>Id.</u> at 301 (quoting the district court). The court held the insurer "cannot avoid its duty to defend the claims in the underlying actions on the ground that some of those claims appear to arise out of knowingly wrongful acts, because such acts, by definition, are not negligent." <u>Id.</u> The same analysis can be applied here.

Similarly, in <u>Steadfast Ins. Co. v. Stroock & Stroock & Lavan LLP</u>, 277 F. Supp. 2d 245, 252 (S.D.N.Y. 2003), a case cited by American Home, the district court interpreted an exclusion in a professional liability insurance policy for claims "arising

out of . . . *knowingly* wrongful . . . act[s]." The district court concluded, "The only reasonable interpretation of this [knowingly wrongful act] exclusion is that [the insurer] disclaimed coverage for all causes of action for which actual knowledge of wrongdoing is an essential element." Id. Under this construction, Kelly's negligence claim against Dr. Strnad does not fall under the American Home knowingly wrongful act exclusion.

An alternative, and also reasonable, interpretation is that the provision in question excludes coverage for liability resulting from an act committed with the actual, subjective knowledge that the act was negligent while allowing coverage where the person merely should have known of his duty. Kelly contemplates this interpretation of the policy in her brief on appeal. She argues, where "conduct by a professional was and would be negligent and irresponsible, but not necessarily a knowing commission of a wrongful act," the policy exclusion would not apply. See Byers v. Spaulding, 725 S.W.2d 893, 895 (Mo. Ct. App. 1987) ("[A] plaintiff asserting a cause of action based on the negligence of another in failing to act must allege and prove that the defendant ***knew or should have known*** that failure to act was likely to result in injury to the plaintiff." (emphasis added)).

In summary, we conclude the American Home insurance policy exclusion for knowingly wrongful acts is ambiguous. See also Am. Home Assurance Co. v. Cohen, 815 F. Supp. 365, 369 (W.D. Wash. 1993) (holding a similar wrongful act exclusion in an American Home policy ambiguous for other reasons), aff'd, 67 F.3d 305 (9th Cir. 1995). This policy exclusion is poorly drafted, leaving open a question of what it does and does not cover. The proper ruling from this court is to construe the ambiguous policy exclusion against American Home. We hold the American Home policy covers Dr. Strnad's actions, entitling Kelly to indemnification from American Home. See Kromback v. Mayflower Ins. Co., 827 S.W.2d 208, 210 (Mo. 1992) (en banc); Meyer Jewelry Co. v. Gen. Ins. Co. of Am., 422 S.W.2d 617, 623 (Mo. 1968).

## B.    Indemnification

In American Home II, 487 F.3d at 599, we declined to find American Home had a duty to indemnify Dr. Strnad's estate because no fact-finding body had yet considered whether Kelly's claim, that Dr. Strnad was negligent in failing to warn Kelly or someone else in a position to protect her, was causally linked to Kelly's damages. The arbitration panel previously held Dr. Strnad was liable to Kelly for damages in the amount of $8 million arising from Dr. Strnad's negligence. We still do not know whether Kelly's common law claim was the sole basis for the arbitration award and subsequent judgment, although we suspect it was.

For this reason, we again remand for further proceedings to determine if Kelly's damages identified in the arbitration award and judgment were caused, in whole or in part, by conduct other than that alleged in Kelly's common law claim. If so, the district court must consider whether the other conduct which caused damages is covered by the American Home policy, and if covered, whether the damages are excluded by the policy.

## III.   CONCLUSION

We reverse and remand for further proceedings consistent with this opinion.

_____