# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 05-4234

_____

American Home Assurance Company,    *
                                       *

          Plaintiff - Appellant,    *

                                         *

     v.    *

                                         *

Kelly Pope; C. Robert Buckley,    *
appointed as legal representative of    *
Bruce N. Strnad, a deceased individual,    *
                                         *

          Defendants - Appellees.    *

_____

No. 05-4238

_____

Appeals from the United States
District Court for the
Western District of Missouri.

American Home Assurance Company,    *
                                       *

          Plaintiff - Appellee,    *

                                         *

     v.    *

                                         *

Kelly Pope,    *

                                         *

          Defendant;    *

                                         *

C. Robert Buckley, appointed as legal    *
representative of Bruce N. Strnad, a    *
deceased individual,    *
                                         *

          Defendant - Appellant.    *

_____

No. 06-1750

_____

American Home Assurance Company,   *
                                 *

          Plaintiff - Appellant,   *
                                 *

       v.                          *
                                 *

Kelly Pope; C. Robert Buckley,   *
appointed as legal representative of
Bruce N. Strnad, a deceased individual,   *
                               *

          Defendants - Appellees.   *

_____

Submitted:  September 25, 2006
Filed:  June 8, 2007

_____

Before MELLOY, BRIGHT, and HANSEN, Circuit Judges.

_____

MELLOY, Circuit Judge.

The late Dr. Bruce Strnad[1] had been the treating psychologist for Lester Pope ("Lester"), a man who admitted to sexually abusing his daughter, Kelly Pope ("Kelly" or "Pope"). Lester ceased treatment and continued to abuse Kelly for more than a year, until a social worker who began treating Kelly for emotional trauma reported the suspected abuse to state officials. This report resulted in a criminal investigation, and Lester was arrested for the sodomy and attempted rape of Kelly.

_____

[1] Strnad died in 1993.

-2-

Kelly sued Dr. Strnad in state court for negligence, alleging that Dr. Strnad breached his duty of care by failing to warn anyone that Lester had stopped treatment and presented an ongoing danger to her. Dr. Strnad carried a professional liability insurance policy from Plaintiff American Home Assurance Company ("American Home"), and American Home brought a federal declaratory judgment action against Dr. Strnad and Kelly that sought to establish that American Home did not have a duty to defend or indemnify Dr. Strnad for damages arising out of his alleged negligence.

The federal district court initially granted summary judgment to American Home, ruling that alleged conduct of Dr. Strnad was subject to an insurance policy exclusion that barred coverage and therefore American Home did not have a duty to defend or indemnify Dr. Strnad against Kelly's claims. We reversed that decision on appeal, finding that Kelly had alleged some causes of her harm that, if proven, might not be subject to policy exclusions. Therefore, we found that American Home had a duty to defend Dr. Strnad. On remand, the district court granted summary judgment to Kelly and Dr. Strnad's defendant ad litem, Robert Buckley, on both the duty-to-defend and duty-to-indemnify issues, dismissed the remainder of American Home's claims without prejudice, and awarded attorney fees to Kelly and Buckley. American Home appeals those decisions.

Prior to the most recent grant of summary judgment, Kelly had obtained a state-court judgment against Drs. Ray and Strnad, and she raised an equitable garnishment counterclaim to collect upon that judgment in the federal proceeding. The district court dismissed that counterclaim without prejudice, and American Home appeals the district court's post-dismissal ruling that Kelly's counterclaim for equitable garnishment was permissive and could be re-filed in state court. Finally, Buckley appeals the district court's dismissal of his counterclaims against American Home for bad faith, negligence, and breach of fiduciary duty. We affirm in part, reverse in part, and remand for further proceedings.

# I. BACKGROUND

## A. Factual History

In 1981, Lester and Nancy Pope formally adopted Kelly, who was then five years old and had been living with the Popes as a foster child for the two previous years. Lester sexually abused Kelly throughout the 1980s. In 1988, Nancy Pope ("Nancy") found evidence of the abuse and questioned Kelly, who told Nancy that Lester had been molesting her.

Nancy called Dr. Joel Ray, a local psychologist. She immediately met with Dr. Ray and his business partner, Dr. Strnad, and they discussed the situation. After this meeting, she confronted Lester and demanded that he undergo counseling. Lester admitted to Nancy that he had abused Kelly, and he began seeing Dr. Strnad. He quit his therapy after only a handful of sessions, however, and he did not cease his abuse of Kelly. Drs. Ray and Strnad failed to notify officials within the Missouri Division of Family Services regarding their knowledge of the abuse, even though Missouri law required them to do so. Mo. Rev. Stat. § 210.115.1 (requiring certain professionals to report suspected child abuse to the Missouri Division of Family Services); id. § 210.165.1 (criminalizing the failure to report such abuse). They also failed to tell Nancy Pope, law-enforcement officials, or anyone else in a position to prevent the harm that Lester Pope had stopped seeing Dr. Strnad or that Lester presented a continuing danger to Kelly.

In late 1989, Nancy took Kelly to see Lynn Ogden, a social worker in the same office as Drs. Ray and Strnad, for help with emotional issues stemming from the abuse. Upon hearing of Lester's sexual abuse, Ogden reported it to state authorities. Health officials found that Kelly, now a teenager, had serious physical and psychological trauma arising from Lester's molestation of her over the past decade. After a criminal investigation, the state charged Lester with three counts of sodomy

and one count of attempted rape. He pled guilty to one of the sodomy charges and served five years in prison.

B. Procedural History

1. Background Proceedings, 1991 to 2002

The procedural odyssey of this case began in 1991, when Norma Bradley (as next friend to Kelly Pope) filed a state tort lawsuit alleging, among other claims, that Drs. Strnad and Ray were negligent per se in violating the Missouri mandatory-reporting statute and that they breached a common law duty to warn of the danger of further abuse by Lester. The state trial court dismissed those claims.

The Missouri Court of Appeals for the Western District upheld the dismissal of the negligence per se claim, ruling that the mandatory-reporting statute did not create a private cause of action. Bradley v. Ray, 904 S.W.2d 302, 314 (Mo. Ct. App. 1995). It reversed the dismissal of the common law failure-to-warn claim, however, holding that Missouri would join the majority of jurisdictions in recognizing a duty to warn on the part of treating psychologists:

> Specifically, we hold that when a psychologist or other health care professional knows or . . . should have known that a patient presents a serious danger of future violence to a readily identifiable victim the psychologist has a duty under Missouri common law to warn the intended victim or communicate the existence of such danger to those likely to warn the victim including notifying appropriate enforcement authorities.

Id. at 312. The Missouri Court of Appeals reversed and remanded the case to the trial court for a determination of whether Drs. Strnad and Ray breached this duty. Id.

For reasons unclear from the record and unexplained by the parties, Bradley failed to pursue the case, and the trial court dismissed it without prejudice in 1998. In 1999, Kelly Pope re-filed the case in state court on her own behalf and included a common-law failure-to-warn claim against Dr. Ray and a yet-to-be-appointed defendant ad litem for Dr. Strnad. The court appointed Strnad's widow, Donna Strnad, as the defendant ad litem, and the parties commenced pre-trial proceedings.

As the trial drew nearer, Dr. Ray and Donna Strnad engaged in discussions with American Home regarding coverage of potential liability under the partnership's insurance policy. American Home had been defending both Dr. Ray and Donna Strnad (as defendant ad litem for Dr. Strnad) under a reservation of rights; both defendants now demanded that American Home withdraw that reservation and indemnify them as to any liability arising from the suit. On April 2, 2002, American Home sent them a letter in which it agreed to defend and indemnify Dr. Ray up to the policy limits for any liability other than punitive damages. American Home refused to withdraw the reservation of rights as to the claim against Dr. Strnad, however, and it gave notice—for reasons set forth below—that it would no longer defend or indemnify Dr. Strnad's estate for the claim.

The next day, American Home filed suit against Kelly Pope and Donna Strnad in the United States District Court for the Western District of Missouri, seeking a declaratory judgment that it had no duty to defend or indemnify Dr. Strnad's estate because Dr. Strnad's alleged conduct fell outside the policy language or, in the alternative, that it was subject to policy exclusions. The policy provided liability coverage for "any wrongful act committed . . . by the Insured," and it defined a wrongful act as "any actual or alleged negligent act, error, or omission." American Home argued that the facts alleged in Kelly's complaint amounted to an assertion of malicious or intentional misconduct by Dr. Strnad, which would fall outside the policy definition of a "wrongful act." In addition, the policy specifically excluded coverage for claims arising from criminal behavior or from "any wrongful act committed with knowledge that it was a wrongful act." American Home argued that both exclusions

applied, noting that Dr. Strnad's failure to comply with the Missouri reporting statute was a criminal act, Mo. Rev. Stat. § 210.165, and contending that his behavior was also "knowingly wrongful." Therefore, American Home asserted that it had no duty to defend or indemnify Dr. Strnad's estate.

In response to American Home's decision to treat Dr. Ray and the Strnad estate differently, Kelly decided to proceed separately against them. One week after American Home filed for declaratory judgment, Kelly reached an agreement with Donna Strnad under Mo. Rev. Stat. §537.065, whereby Kelly would forgo seeking damages against the Strnad estate directly and instead pursue recovery only from American Home. In addition, Donna Strnad and Kelly agreed that Robert Buckley would replace Donna Strnad as defendant ad litem and the parties would submit the dispute to binding arbitration before a panel of retired Missouri judges. They also agreed that the arbitration panel need not provide a basis for its ruling other than a simple finding of whether or not Dr. Strnad was negligent, and Buckley would not object to any evidence Pope presented to the panel.

The case then proceeded on three fronts: Kelly's state-court trial against Ray, Kelly's state arbitration proceedings against Buckley (as defendant ad litem for Strnad), and the federal declaratory judgment suit between American Home, Buckley, and Kelly.

## 2. State Proceedings, 2003 to 2005

The state-court case against Dr. Ray went to trial in September 2003, and it came before the jury solely on a theory of Dr. Ray's vicarious liability for the acts and omissions of Dr. Strnad. Jury instruction number seven directed the jury to enter a verdict for Kelly Pope if it found that (1) Drs. Ray and Strnad were business partners; (2) "Dr. Strnad knew or should have known of an ongoing danger presented to plaintiff by Lester Pope;" (3) "Dr. Strnad failed to warn of the ongoing danger presented to plaintiff by Lester Pope;" (4) Dr. Strnad was thereby negligent; and (5)

his negligence caused harm to Kelly Pope. The instruction did not ask the jury to specify whether Pope's damages arose from Dr. Strnad's failure to warn her mother, Division of Family Services officials, or someone else who would be in a position to prevent the harm. The jury found for Pope and awarded five million dollars in damages against Dr. Ray.

In early 2004—a few months after the original jury verdict against Dr. Ray—Pope and Buckley submitted the Strnad claim to arbitration. Because American Home had previously declined to defend Dr. Strnad, it did not take part in the arbitration. The parties stipulated to the record from Dr. Ray's trial and submitted it as the evidentiary record in the arbitration proceeding. The arbitrators found for Pope and awarded eight million dollars in damages. Pope submitted the arbitration award to the trial court. In a single order, the trial court entered judgment upon the arbitration award against Dr. Strnad as well as the jury verdict against Ray, and it assessed prejudgment interest for a total award of more than twenty-seven million dollars against Drs. Ray and Strnad collectively.

Dr. Ray appealed the judgment against him on several grounds. The Missouri Court of Appeals affirmed the verdict as to his liability but remanded for a new trial on the issue of damages because the jury received evidence relating to insurance coverage without a proper limiting instruction. Pope v. Pope, 179 S.W.3d 442, 463-66 (Mo. Ct. App. 2005) (en banc). The damages trial has not yet occurred.

### 3. Federal Proceedings

Meanwhile, in federal district court, American Home pursued its effort to obtain a declaratory judgment that it did not have to indemnify Dr. Strnad's estate or pay for its defense against Kelly Pope's claim. In 2003, shortly before the trial against Dr. Ray was to begin in state court, the district court granted American Home's motion for summary judgment. The district court found that Pope's complaint clearly alleged

a "wrongful act" within the language of the policy; as noted above, the policy defined a wrongful act as an "actual or alleged negligent act, error, or omission," and Pope had alleged only negligence. The district court held, however, that Dr. Strnad's failure to report the abuse amounted to a criminal act in violation of the Missouri reporting statute and was therefore subject to a policy exclusion. Thus, the district court ruled that the Strnad estate was not entitled to coverage and Pope could not collect any judgment against it from American Home (which effectively meant that Pope could not collect on any judgment against Dr. Strnad at all, because her prior agreement with Donna Strnad required her to forgo any effort to seek satisfaction of such a judgment from the Strnad estate).

Buckley and Pope appealed to this court, and we reversed the district court's grant of summary judgment. Am. Home Assurance Co. v. Pope (American Home I), 360 F.3d 848, 853 (8th Cir. 2004). In Bradley, 904 S.W.2d at 312, the Missouri Court of Appeals had held that a common-law duty to warn could encompass a duty to warn the victim, her care-givers, or other officials as well as (or in lieu of) state social-services authorities. Pope argued that she had adequately alleged the common-law failure to warn a person or entity to whom Dr. Strnad was not required to report under threat of criminal sanction, such as Pope's mother, as a possible theory of liability in her state-court petition against Strnad.[2] We agreed. American Home I, 360 F.3d at

---

[2] Strnad had a statutory duty, under threat of criminal sanction, to report the abuse to the Missouri Department of Social Services. Mo. Rev. Stat. § 210.115.1; id. § 210.165.1. Therefore, his failure to warn state social-services officials fell within the scope of the policy exclusion for criminal acts. Under Bradley, Strnad arguably had a common-law duty to warn police or others in a position to prevent the abuse, such as Pope and her mother. Bradley, 904 S.W.2d at 312. The failure to warn these individuals was not a criminal act, and therefore the policy coverage arguably applied to the failure to warn any of them. Compare id. ("[W]hen a psychologist . . . knows . . . that a patient presents a serious danger of future violence to a readily identifiable victim the psychologist has a duty under Missouri common law to . . . communicate the existence of such danger to those likely to warn the victim including notifying appropriate enforcement authorities.") with Comstock v. Walsh, 848 S.W.2d 7, 9 (Mo.

852. Failing to warn some person or entity other than the Missouri Division of Family Services would not have been a criminal act under the Missouri statute, but it could have amounted to common-law negligence under Bradley. Thus, we held that the district court erred in ruling that the criminal act exclusion applied to all of Pope's claims against Dr. Strnad, we reversed the grant of summary judgment in favor of American Home, and we remanded for further proceedings in the coverage dispute. Id. at 853.

Upon their return to the district court, all parties filed amended claims or counterclaims. American Home's two previous claims addressed the policy exclusions for criminal and knowingly wrongful behavior (Count I) and whether the alleged conduct fell outside policy language limiting coverage to "any actual or alleged negligent act, error, or omission" (Count II). On remand, American Home added four new claims, as follows. First, it argued that if coverage applied, it was limited by a Missouri statute capping damages for non-economic losses against health care providers (Count III). Mo. Rev. Stat. § 538.210.1. Second, it alternatively argued that policy limits should apply to cap American Home's total, combined liability for both claims at one million dollars (Count IV). Third, it argued that the agreement between Kelly Pope and Donna Strnad to submit the claim against Strnad to arbitration was unreasonable because it was collusive and Strnad's defendant ad litem status gave her no authority to enter into such an agreement (Count V). Finally,

Ct. App. 1992) (noting that § 210.115 "requires certain persons . . . to report cases of suspected child abuse to the Division of Family Services. There is no provision for making the report to any other person or agency") (citation omitted). Pope's state-court petition broadly alleged Dr. Strnad's negligent failure to warn Kelly or Nancy Pope, as well as the failure to notify "the prosecuting attorney, the police or other peace officer[s], any law enforcement agency, [j]uvenile [o]ffice, the Missouri Division of Family [S]ervices, or any other protective service agency, office, or officer." Of these allegations, only the failure to warn the Missouri Division of Family Services constituted a criminal act under § 210.115.1 and § 210.165.1, and therefore the criminal act exclusion clearly applied only to the failure to warn that particular state agency.

American Home claimed that Drs. Ray and Strnad were jointly and severally liable because the jury awarded damages against Dr. Ray on a vicarious-liability theory (Count VI). Therefore, the court could not force American Home to pay out under both the Ray verdict and the Strnad arbitration award because it would amount to double recovery for Pope.

Buckley added counterclaims alleging bad faith, negligent claims handling, and breach of fiduciary duty against American Home. Pope, with her twenty-seven million dollar judgment from the state trial court now in hand, filed a counterclaim to collect on that judgment under Missouri's equitable garnishment statute. Mo. Rev. Stat. § 379.200.

American Home first moved to dismiss Buckley's counterclaims because his status as defendant ad litem—which allowed him to serve as the "named party defendant" in an action against an insurer—did not give him the authority to bring claims against the insurer. Mo. Rev. Stat. § 537.021.1(2). The district court granted the motion, noting the "narrow purpose" of the statute governing defendants ad litem.

Buckley and Pope moved for summary judgment on the remaining claims. The district court granted summary judgment to Buckley and Pope as to Counts I and II of American Home's complaint on the basis of this court's opinion in American Home I. It noted our statement that "American Home has an obligation to provide coverage under Dr. Strnad's policy," American Home I, 360 F.3d at 850, and therefore American Home had a duty to both defend and indemnify Dr. Strnad's estate for damages arising from Dr. Strnad's failure to warn Pope or her mother. Based upon this conclusion, it granted summary judgment in favor of Buckley and Pope.

In the same order, the district court dismissed Pope's equitable garnishment counterclaim and Counts III through VI of American Home's complaint sua sponte and without prejudice, finding that they were "all issues not properly before a federal court in a declaratory judgment action and should be raised in the state court

litigation."[3] In a later order, the district court clarified the dismissal of Pope's equitable garnishment counterclaim, ruling that it was a permissive counterclaim and therefore res judicata would not bar her from raising it in subsequent state court proceedings. Pope did just that, filing a petition for equitable garnishment in state court roughly three months after the district court's ruling. That action is currently pending.

Shortly after receiving the grant of summary judgment as to Counts I and II of American Home's complaint, Pope and Buckley also filed a motion seeking attorney fees. The district court applied Missouri law governing the right to attorney fees in state declaratory judgment actions. It found that Missouri grants exceptions to the American rule governing fees in cases where one party wrongfully subjects another to collateral litigation and where "very unusual circumstances" exist in which the court awards fees to balance the benefits of costly litigation. After citing to American Economy Insurance Co. v. Ledbetter, 903 S.W.2d 272, 277 (Mo. Ct. App. 1995), for the proposition that trial courts have broad discretion to award attorney's fees when justice and equity require it, the district court held that American Home was liable to Buckley and Pope for their fees and costs in defending the declaratory judgment action.

American Home appeals the district court's grant of summary judgment on Counts I and II of its complaint, the dismissal without prejudice of Counts III through VI of its complaint, the ruling that Pope's equitable garnishment counterclaim was permissive, and the award of attorney fees. Buckley appeals the dismissal with prejudice of his counterclaims against American Home. We address each of these issues below.

_____

[3] Ray's appeal from the state-court judgment was pending at the time the federal district court dismissed these claims.

**II. SUMMARY JUDGMENT ON INDEMNIFICATION**

We first consider whether the district court erred in granting summary judgment against American Home on Count I of its complaint. As to that count, the district court held that American Home had a duty to defend and indemnify Strnad's estate for damages arising from Strnad's actions. American Home appeals this ruling, arguing that American Home I decided only the duty to defend, rather than the duty to indemnify, and therefore it did not bind the district court to enter an order granting summary judgment to Buckley and Pope. Specifically, American Home argues that the district court erred in failing to conduct a factual inquiry into whether those allegations of Pope's claim that were not subject to policy exclusions actually gave rise to damages.

We review a district court's grant of summary judgment de novo, and "may affirm on any grounds supported by the record." Cottrill v. MFA, Inc., 443 F.3d 629, 635 (8th Cir. 2006). As in American Home I, "[w]e construe the facts in the light most favorable to the non-movant." American Home I, 360 F.3d at 850.

A. Scope of Our Decision in American Home I

Our analysis must begin with a clarification of the matters we did and did not decide in American Home I. American Home I came before this court after the district court granted summary judgment to American Home on both the duty-to-defend and duty-to-indemnify issues, which are not synonymous. Allegations subject to coverage on the face of the policy trigger a duty to defend; the duty to indemnify is narrower and "must await the facts." Superior Equip. Co. v. Md. Cas. Co., 986 S.W.2d 477, 484 (Mo. Ct. App. 1998); see also Royal Ins. Co. of Am. v. Kirksville Coll. of Osteopathic Med., Inc., 304 F.3d 804, 807 (8th Cir. 2002) (applying Missouri law and holding that "even when it has breached the duty to defend, an insurer is still entitled to a trial on the coverage issue" (quotation omitted)). "The policy covers

-13-

negligent acts or omissions, whether actual or alleged," American Home I, 360 F.3d at 851; Pope had alleged only negligence, and the parties conceded for the purposes of appeal in American Home I that American Home had a duty to defend Dr. Strnad unless her allegations on their face were subject to a policy exclusion. The district court found that the policy exclusion for criminal acts applied. Because the district court believed that all of Pope's claims for relief arose out of Dr. Strnad's criminal failure to warn social-services officials, it implicitly ruled that American Home had no duty to defend the claims against Dr. Strnad, and therefore had no duty to indemnify his estate.

Thus, the question before this court in American Home I was whether Pope's allegations raised any claims that *could* be subject to coverage under the policy. We answered that question affirmatively. This answer precluded summary judgment in favor of American Home on the issue of whether it had a duty to defend Dr. Strnad and opened the possibility that Dr. Strnad's estate was entitled to indemnification. The parties conceded for the purposes of that appeal that the allegations in Pope's complaint fell within the policy's definition of a "wrongful act," id., and therefore coverage applied unless all of Pope's theories of relief were barred by one or more specific policy exclusions. On this question, we concluded that "American Home . . . failed to demonstrate that a policy exclusion applied" to Kelly's *separate claim* regarding Dr. Strnad's failure to warn Kelly or her mother, who was in a position to protect her daughter from further abuse." Id. at 853 (emphasis added). We did not address whether that particular "separate claim" (or some other claim not subject to the criminal act exclusion) was valid for the purpose of the duty to indemnify, however, because no fact-finding body had ever considered the question of whether that claim or other claims were causally linked to Kelly's alleged damages. Indeed, American Home I anticipated a determination of these facts on remand, noting that "evidence of Dr. Strnad's actions relating to the failure to warn Kelly or her mother of Lester's future dangerousness could be admissible" in such a proceeding. Id. at 853 n.8.

-14-

Kelly Pope and Buckley argue (and the district court agreed) that because the opinion in American Home I uses the word "coverage" rather than "potential coverage" or "duty to defend," this court must have ruled conclusively on both the duty-to-defend and duty-to-indemnify issues. Both the holding of that case and its posture at the time it was before this court preclude that interpretation of the opinion. As the above analysis shows, we did not conclusively decide the indemnification issue in favor of Pope and Buckley. We merely reversed the grant of summary judgment in favor of American Home and remanded for further proceedings, namely proceedings to determine what role, if any, Dr. Strnad's failure to inform a person or entity to whom he owed a common-law (but not a statutory) duty to warn of the danger to Pope—such as Pope's mother—played in causing Pope's injuries. The district court erred in concluding that American Home I required a grant of summary judgment against American Home on the issue of indemnification.

### B. Collateral Estoppel

Even if the district court erred in its rationale for granting summary judgment, we may affirm if the district court would have reached the same result had it applied different, valid grounds. U.S. Gypsum Co. v. Greif Bros. Cooperage Corp., 389 F.2d 252, 262 (8th Cir. 1968). In this case, Pope and Buckley argue that the district court could have reached the same result by applying collateral estoppel. Specifically, they argue that the jury verdict against Dr. Ray and the arbitration-panel decision against Dr. Strnad collaterally estop American Home from contesting the issue of Dr. Strnad's breach of the common-law duty to warn. In essence, they contend that a fact-finding proceeding before the district court was unnecessary because it would have merely re-litigated the same facts at issue in the state proceedings.

In diversity cases, we grant state-court judgments the same preclusive effect that they would receive in the forum state. Ewing v. St. Louis-Clayton Orthopedic

-15-

Group, Inc., 790 F.2d 682, 685 (8th Cir. 1986). In determining whether to apply collateral estoppel, Missouri courts consider four factors:

> (1) whether the issue decided in the prior adjudication was identical to the issue presented in the present action; (2) whether the prior adjudication resulted in a judgment on the merits; (3) whether the party against whom estoppel is asserted was a party or was in privity with a party to the prior adjudication; and (4) whether the party against whom collateral estoppel is asserted had a full and fair opportunity to litigate the issue in the prior suit.

James v. Paul, 49 S.W.3d 678, 682 (Mo. 2001) (en banc).

The parties raise a number of arguments relating to the last three factors, particularly whether American Home had a full and fair opportunity to litigate in the Strnad arbitration proceeding. We need not reach those questions here, however, because the first factor alone is dispositive. At no time in the lengthy procedural history of this dispute has any adjudicative body addressed the precise issue relevant to this case: whether, and to what extent, Pope's damages arose from Dr. Strnad's failure to warn someone other than Missouri Division of Family Services officials. In Ray's jury trial, the instructions show that the jury answered only whether Dr. Strnad breached his common-law duty to warn, and whether Dr. Ray could be held vicariously liable for that breach. In the arbitration proceeding governing Dr. Strnad's liability, the panel similarly only considered whether Dr. Strnad breached his common-law duty to warn. Missouri's definition of the common-law failure to warn encompasses the failure to warn "the intended victim" or "those likely to warn the victim including notifying appropriate enforcement authorities." Bradley, 904 S.W.2d at 312. This could encompass a failure to warn any number of individuals, including the social-services officials to whom Strnad was statutorily required to report under threat of criminal sanction. It therefore could also constitute a number of separate, discrete "wrongful acts" within the language of the policy, several of

-16-

which were raised in Pope's complaint and only one of which is subject to a policy exclusion on its face.

In short, the adjudicative bodies in both the Ray trial and the Strnad arbitration proceeding could have found that Strnad was negligent only in his failure to warn officials within the Missouri Division of Family Services, or that the failure to warn those officials was the only negligent omission to cause damages to Pope, or that some portion of the damages was solely attributable to the failure to warn those officials. We cannot know if the fact-finding bodies took any of these courses,[4] but to the extent they did, at least part of the claim for indemnification could be barred by the criminal-act exclusion in the insurance policy.

Therefore, we reverse the grant of summary judgment for Buckley and Pope as to Count I of American Home's amended complaint and remand to the district court for a factual determination of whether, and to what extent, Strnad's failure to warn Pope, her mother, or some person or entity other than the Missouri Division of Family Services caused Pope's injuries.

On remand, American Home may also seek to prove that the "knowingly wrongful" policy exclusion applies to the claim for indemnification. As noted earlier, American Home's duty to defend was the only issue before this court in American Home I, and the "knowingly wrongful" exclusion did not apply in that context because Pope alleged only negligence and her allegations, on their face, were not subject to the exclusion. Those allegations, however, are relevant only to the duty defend; determination of a duty to indemnify "must await the facts."    Superior

---

[4] Pope is at least partly to blame for this fact, given that her agreement with Donna Strnad not to seek recovery against Strnad's estate included a provision governing the arbitration proceedings whereby "the arbitrators need not provide any kind of basis for the ruling other than whether or not their finding was based upon negligence and the amount of damages."

Equip. Co., 986 S.W.2d at 484. Thus, the law-of-the-case doctrine does not apply to the question of whether Strnad committed a wrongful act "with knowledge that it was a wrongful act" within the language of the policy exclusion.

C. Summary Judgment as to Count II

On appeal, American Home does not appear to make any specific arguments with regard to the propriety of summary judgment upon Count II of its amended complaint, in which it claimed that Strnad's behavior was not a "wrongful act" within the language of the policy. Even assuming American Home preserved this issue on appeal, however, we affirm the district court's grant of summary judgment in favor of Pope and Buckley as to Count II. The policy defines a "wrongful act" as "any actual *or alleged* negligent act, error, or omission" (emphasis added). Pope alleged that Dr. Strnad had negligently failed to warn of the danger to Pope. Because the policy defines "wrongful act" to include mere allegations of negligence—regardless of whether the insured actually intended harm or knew that his conduct was wrongful—no further fact-finding is necessary to conclude that Dr. Strnad's behavior was a "wrongful act" as defined by the policy.

To summarize, we reverse the grant of summary judgment against American Home as to Count I of American Home's amended complaint and affirm the grant of summary judgment as to Count II. On remand, the district court has two considerations with regard to Count I. First, it must consider whether Dr. Strnad's commission of "wrongful act(s)" in failing to warn some person or entity other than the Missouri Division of Family Services was knowingly wrongful. Second, if the district court determines that Dr. Strnad's conduct was not knowingly wrongful, the district court must determine whether, and to what extent, Dr. Strnad's failure to warn some person or entity other than the Missouri Division of Family Services gave rise to Pope's damages.

**III. DISMISSAL WITHOUT PREJUDICE OF COUNTS III THROUGH VI OF AMERICAN HOME'S COMPLAINT AND POPE'S EQUITABLE GARNISHMENT COUNTERCLAIM**

American Home also argues that the district court erred in dismissing without prejudice Counts III through VI of its complaint, as well as ruling that Kelly Pope's equitable garnishment counterclaim was permissive and could be re-filed in state court. We address these issues in turn.

### A. Counts III through VI of American Home's Amended Complaint

We begin with the district court's dismissal of Counts III through VI of American Home's amended complaint. American Home added these counts after American Home I and after the entry of the state trial court's judgment awarding damages from the Ray verdict and the Strnad arbitration hearing. The district court did not use the term "abstention" or apply a detailed analysis of its suitability in this situation, but that rationale for dismissal is clear from the language of its opinion, namely its holding that "these issues . . . should be raised in the state court litigation" involving the Ray-Strnad combined judgment.

We review a district court's decision to stay or dismiss declaratory-judgment claims for abuse of discretion. Scottdale Ins. Co. v. Detco Indus., Inc., 426 F.3d 994, 996 (8th Cir. 2005). The state proceedings at issue here were not parallel to the federal proceedings; the state proceedings were related to the liability of Drs. Ray and Strnad and did not directly address the details of American Home's obligations under the insurance policy. Further, American Home was not a party to the state proceedings. Therefore this court analyzes the exercise of abstention by applying the six-factor test we adopted in Scottsdale:

> [T]he relevant factors to consider are: (1) whether the declaratory judgment sought will serve a useful purpose in clarifying and settling

the legal relations at issue; (2) whether the declaratory judgment will terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to the federal proceeding; (3) the strength of the state's interest in having the issues raised in the federal declaratory judgment action decided in the state courts; (4) whether the issues raised in the federal action can more efficiently be resolved in the court in which the state action is pending; (5) whether permitting the federal action to go forward would result in unnecessary entanglement between the federal and state court systems, because of the presence of overlapping issues of fact or law; and (6) whether the declaratory judgment action is being used merely as a device for procedural fencing—that is, to provide another forum in a race for res judicata or to achieve a federal hearing in a case otherwise not removable.

Id. at 998 (quotations and alterations omitted); see also id. at 999 (adopting that test in this circuit).

Applying that test to the claims at issue, we find that the district court did not abuse its discretion in dismissing Counts III through VI of American Home's complaint without prejudice. Missouri has a strong interest in these claims because they entail a determination of the validity and limitations upon the execution of a state-court judgment arising out of a state-court verdict and a state arbitration proceeding. These claims also require the application of only state law, and some of the counts at issue here (namely Counts III and V) raise sensitive issues of Missouri statutory interpretation, thus adding to the state interest in the case.

As to efficiency, we note that both parties' choices throughout the history of this case have already led to extensive inefficiency in both state and federal courts. Keeping the counts at issue in federal court, however, would only add to that inefficiency. Assuming that the district court acted within its discretion in dismissing Pope's equitable garnishment counterclaim, a question we consider below, then it would be far more efficient for American Home to raise all of its defenses seeking to limit its liability under that judgment in the same proceeding where Pope seeks to

-20-

collect upon it. Indeed, she has already filed a state action for equitable garnishment, and American Home is free to raise such defenses there. See Butters v. City of Independence, 513 S.W.2d 418, 425 (Mo. 1974) (allowing an insurer, on facts similar to the case at hand, to raise defenses relating to the duty and extent of indemnification in a plaintiff's action for equitable garnishment).

Retaining Counts III through VI in federal court also holds the potential to entangle issues of fact and law between the state and federal courts even more than they are already. Without those claims, the task of the district court is limited to evaluating the facts in light of the language concerning policy exceptions; the task of the state courts is limited to determining the enforceability of the state-court judgment, including such matters as its size and validity. The case has been through multiple cycles of appeal in the state courts on various issues—the size of the damages awarded to Pope among them—and it is reasonable to assume that those courts have a closer connection to both the facts and law relevant to their role in the litigation.

The two remaining Scottsdale factors relevant to this case appear to weigh against abstention, but only slightly. Resolving all of American Home's defenses to full indemnification in one proceeding would seem to create some certainty and establish what amount, if any, Pope could legally recover as to her claim against Dr. Strnad. But because the claim against Dr. Strnad (as well as some of American Home's defenses) is linked to the case against Dr. Ray, and that case has yet to reach its final resolution in the state courts, any certainty to be gained by ruling on Counts III through VI here could be fleeting. Much more certainty, finality, and efficiency would come from waiting for final judgment in the Ray case, after which time a state court could hear all of American Home's defenses to full indemnification and all of Pope's arguments for enforcing the Ray and Strnad judgments.[5]

---

[5] It appears the parties have already begun to take this course. Pope filed her equitable garnishment claim against in state court shortly after the district court

B.  Equitable Garnishment Counterclaim

We deal next with the dismissal of Pope's equitable garnishment counterclaim. In its initial order, the district court appears to have dismissed the claim under the abstention doctrine, stating that "[t]his issue is not properly before this court."  Pope moved to clarify the ruling, and the district court responded by adding that the dismissal was without prejudice and stating that "[t]he issues raised by Kelly Pope's equitable garnishment claim are properly raised in the state court litigation."

The basis for American Home's appeal of this issue does not arise out of the dismissal itself, but rather certain language within the district court's order following Pope's motion to clarify the ruling.  Pope, concerned that she could be barred from re-filing the equitable garnishment claim in state court, sought reassurance from the district court that her equitable garnishment counterclaim was not a compulsory counterclaim in the federal declaratory judgment action.  The district court provided that reassurance, ruling that "it appears . . . [the] equitable garnishment action would not be considered a compulsory counterclaim" and she would not be barred from bringing it in state court.

As noted above, we believe the district court ultimately dismissed the counterclaim on the basis of abstention and not as a discretionary refusal to hear a permissive counterclaim.  As such, the district court's additional statement that Pope's counterclaim was not compulsory was superfluous, because the common-law doctrine of abstention is not subservient to Rule 13 of the Federal Rules of Civil Procedure.  The compulsory-permissive distinction of Rule 13 does not limit a district court's power to abstain in a given case.  After all, we can imagine a situation in which there are cases involving several claims between the same parties in two

dismissed it without prejudice.  Presumably, American Home will assert Counts III through VI of its amended federal complaint, which were dismissed without prejudice in the federal proceeding, as affirmative defenses in the state proceeding.

-22-

different courts, and one or more overlapping counterclaims are compulsory within the meaning of Rule 13(a) in each case. We would not say that one of those courts abused its discretion in dismissing those overlapping counterclaims to allow them to proceed in the other court merely because they fit the Rule 13(a) definition of compulsory.[6]

We believe the district court ultimately dismissed the counterclaim for the same reason it dismissed Counts III through VI of American Home's amended complaint: it was an appropriate issue for abstention in deference to the state-court litigation. The same rationale for abstention with regard to related counts of American Home's amended complaint applies with equal force to Pope's equitable garnishment counterclaim. Therefore, we do not find that the district court abused its discretion in dismissing Pope's equitable garnishment counterclaim without prejudice to allow her to raise it in state-court proceedings.

---

[6]Even if the compulsory-permissive distinction were relevant in this case, we note that the equitable garnishment counterclaim was not compulsory under Rule 13 and the district court had the authority to dismiss it on that basis. Assuming the validity of American Home's argument that its claims for non-coverage under an insurance policy and Pope's counterclaim to collect a judgment on the basis of that policy arise under the same "transaction or occurrence," Fed. R. Civ. P. 13(a), the counterclaim satisfies an exception to the compulsory-counterclaim rule implicated by the district court's statement in the original dismissal that "[t]his issue is not properly before this court." Rule 13(e) states that parties must receive the permission of the court to present a counterclaim "which either matured or was acquired by the pleader after serving a pleading"; such claims are, by the terms of Rule 13(e), permissive. Stone v. Dep't of Aviation, 453 F.3d 1271, 1280-81 (10th Cir. 2006). Pope's claim did not mature until almost two years after she filed her original answer in the case, and there is no evidence in the record that she received permission of the court to add this now-mature counterclaim when filing her answer to American Home's later amended complaint. Thus, the district court had the power to dismiss the counterclaim as not properly before the court.

## IV. DISMISSAL OF BUCKLEY'S COUNTERCLAIMS

Buckley appeals the district court's dismissal of his counterclaims against American Home for bad faith, negligent claims handling, and breach of fiduciary duty. The district court found that Buckley's status as a defendant ad litem gave him no right to bring tort claims against American Home. On appeal, Buckley argues that he should have the authority to bring such claims, either on Dr. Strnad's behalf or in his own capacity. We review dismissals for failure to state a claim upon which relief can be granted de novo. Stahl v. U.S. Dep't of Agric., 327 F.3d 697, 700 (8th Cir. 2003).

To determine whether Buckley had the legal right to make such claims, we must examine the place of defendants ad litem under Missouri law and their distinction from personal representatives. In Missouri, causes of action survive an injured party's death and may be brought by that party's personal representative, as appointed by the probate court. Mo. Rev. Stat. § 537.020. Similarly, injured parties may maintain a cause of action against deceased parties. Mo. Rev. Stat. § 537.021.1(2). If a deceased tortfeasor is insured and the injured party seeks recovery from the insurer only, the court will appoint a defendant ad litem for the deceased. Id. On the other hand, if the deceased tortfeasor is uninsured, or if the injured party wishes to recover any part of a judgment from the assets of his estate rather than the insurance policy, the court will appoint a personal representative to stand in place of the deceased in the proceedings. Id. The distinction seems relatively simple: the court appoints a personal representative whenever the assets of the estate are potentially involved, and a defendant ad litem whenever the sole assets involved are those of the deceased's insurer. See In re Estate of Hayden, 837 S.W.2d 31, 32 (Mo. Ct. App. 1992).

If defendants ad litem were given the authority to sue for tort claims on behalf of the estate, as Buckley contends, it would render the state-law distinction between defendants ad litem and personal representatives meaningless. Missouri makes this

distinction because "the 'real defendant' [in suits against a defendant ad litem] is the liability insurer." Atlanta Cas. Co. v. Stephens, 825 S.W.2d 330, 333 (Mo. Ct. App. 1992). By asserting his counterclaims, Buckley is attempting to expand the limited scope of his status as defendant ad litem by asserting independent claims that belong to the estate, of which he is not the personal representative under Missouri law.

Buckley's second ground for asserting the counterclaims—that he is entitled to bring them on his own behalf because he "acquired" them from Dr. Strnad's estate when he was appointed defendant ad litem—fails for many of the same reasons. Buckley never faced any personal liability for the actions of Dr. Strnad, was never a party to the insurance contract, and has not been injured by any act or omission of the insurer. Any tort claims arising from American Home's contractual relationship with Dr. Strnad belong to his estate, which could seek to appoint a personal representative to bring such claims. See Truck Ins. Exch. v. Prairie Framing, LLC, 162 S.W.3d 64, 93-94 (Mo. Ct. App. 2005). Therefore, we agree with the district court that Buckley's appointment as defendant ad litem gave him no authority to bring these counterclaims.

## V. ATTORNEY FEES

Because Buckley and Pope are no longer prevailing parties in this action, and because the district court did not base its award of attorney fees upon a finding of bad-faith conduct by American Home during the course of litigation, we vacate the award of attorney fees. We recognize that this issue may arise again on remand, however, and, for the sake of judicial economy, we wish to add a few statements of clarification on this question.

As the district court noted in its order, Missouri law allows a court to award attorney fees to a prevailing party in a declaratory judgment action, but only if the party can show that the circumstances meet one of the "few exceptions" to the American Rule regarding fees. David Ranken, Jr. Tech. Inst. v. Boykins, 816 S.W.2d

-25-

189, 193 (Mo. 1991) (en banc), <u>overruled in part on other grounds by</u> <u>Alumax Foils, Inc. v. City of St. Louis</u>, 939 S.W.2d 907 (Mo. 1997) (en banc). These exceptions include situations (1) "where the natural and proximate result of a breach of duty is to involve the wronged party in collateral litigation," <u>id.</u> at 193; that is, litigation resulting from the breach that is distinct from the suit to prove the breach itself, <u>Mo. Prop. & Cas. Ins. Guar. Ass'n v. Pott Indus.</u>, 971 S.W.2d 302, 306 (Mo. 1998) (en banc); (2) where the court finds a need to "balance benefits" of litigation, <u>66, Inc. v. Crestwood Commons Redev. Corp.</u>, 130 S.W.3d 573, 594 (Mo. Ct. App. 2003), which applies when the benefits of the litigation inure to a discrete group of non-party beneficiaries or the public at large and "the nature of the lawsuit" is such that it is of an "unusual type[]" or "extremely complicated litigation is involved," <u>Gurley v. Montgomery First Nat'l Bank, N.A.</u>, 160 S.W.3d 863, 871 (Mo. Ct. App. 2005) (quotation omitted); and perhaps (3) when the declaratory-judgment plaintiff's claim is clearly baseless under published case law. <u>Ledbetter</u>, 903 S.W.2d at 276-77 ("Given the rights of the parties, the amount of financial interest involved in the case, and [the] lack of standing for [the insurer] to bring this action as evidenced by published case authority, we cannot conclude that the trial court abused its discretion [in awarding fees].").[7]

To the extent that dicta in <u>Ledbetter</u> or other Missouri Court of Appeals cases suggest a more general power to award fees outside the exceptions as defined above, that language conflicts with the Supreme Court of Missouri's clear statements of law regarding the need for a recognized exception to the American Rule to apply before a court can award attorney fees in a declaratory judgment action. <u>See</u> <u>Pott Indus.</u>,

---

[7]Missouri courts also recognize an exception to the American Rule where one party engages in "intentional misconduct" during the course of litigation. <u>Volk Const. Co. v. Wilmescherr Drusch Roofing Co.</u>, 58 S.W.3d 897, 901 (Mo. Ct. App. 2001). This exception is not relevant here, because had the district court found that American Home engaged in bad-faith conduct during the course of litigation, it may have been able to assess fees based upon its inherent power as a federal court. <u>Chambers v. NASCO, Inc.</u>, 501 U.S. 32, 52-55 (1991). There was no such finding in this case.

971 S.W.2d at 306; David Ranken, Jr. Tech. Inst., 816 S.W.2d at 193. When such a conflict arises in a diversity case, the substantive law of a state "declared by its Legislature in a statute or by its highest court in a decision" controls. Erie R.R. Co. v. Tompkins, 304 U.S. 64, 78 (1938). Therefore, if Pope and Buckley prevail on remand, they may recover their attorney fees under state law only if the district court finds that one of Missouri's exceptions to the American Rule applies in this case.

## VI. CONCLUSION

For the foregoing reasons, we affirm the judgment of the district court with respect to its dismissal of Buckley's counterclaims, Pope's counterclaim, and Counts III through VI of American Home's amended complaint, as well as its grant of summary judgment as to Count II of American Home's amended complaint. We reverse the judgment of the district court with respect to Count I of American Home's amended complaint, vacate the award of attorney fees, and remand for a proceeding to determine whether and to what extent the policy exclusions for criminal and knowingly wrongful conduct apply to the facts at issue. Specifically, the district court should determine: (1) whether the facts show that Dr. Strnad's failure to warn some person or entity other than the Missouri Division of Family Services was knowingly wrongful within the language of the policy exclusion; and (2) if not, whether Strnad's failure to warn some person or entity other than the Missouri Division of Family Services gave rise to some or all of Pope's damages.

_____